1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    Keith Young and Jodi Young, husband          )    No. CV-06-1494-PHX-DGC
     and wife,                                     )
10                                                 )
                   Plaintiffs,                     )
11                                                 )    **ORDER**
     vs.                                           )
12                                                 )
     American Family Mutual Insurance              )
13   Company,                                      )
                                                   )
14                 Defendant.                      )
                                                   )
15   _____    )

16          Plaintiffs have filed a motion for summary judgment.  Dkt. #11.  Defendant has filed

17   a cross motion for summary judgment.  Dkt. #14.  The Court has reviewed the memoranda

18   filed by the parties.  Dkt. ##11, 14, 22, 25.  For the reasons discussed below, the Court will

19   deny Plaintiffs' motion and grant Defendant's motion.

20   **I.      The Issue.**

21          On August 28, 2003, Plaintiff Keith Young was struck by an underinsured motorist.

22   Dkt. #12 ¶ 1.  The accident rendered him a paraplegic.  *Id*.  At the time of the accident,

23   Plaintiffs carried an umbrella insurance policy with Defendant which had a liability limit of

24   $2,000,000.  *Id*. ¶¶ 2-3.  The insurance policy did not include uninsured motorist ("UM") or

25   underinsured motorist ("UIM") coverage.  *Id*. ¶¶ 4-5.  Plaintiffs had purchased the policy in

26   1992 and renewed it each year through the date of the accident.  *Id*. ¶ 9.  Defendant never

27   informed Plaintiffs of their right to purchase UM or UIM coverage.  Plaintiffs contend that

28   they would have purchased such coverage had they been told about it.  *Id*. ¶¶ 7-8.

In 1993, the Arizona Supreme Court held that A.R.S. § 20-259.01 required an insurer to offer UM and UIM coverage to its umbrella policy customers and that "failure to do so results in imputation of the coverage to the policy as a matter of law." *Ormsbee v. Allstate Ins. Co.*, 859 P.2d 732, 736 (Ariz. 1993) ("*Ormsbee I*"). The parties agree that *Ormsbee I* applied to Plaintiffs' policy and that Defendant should have offered UM and UIM coverage, but did not. Dkt. ##11 at 2; 14 at 2.

In response to *Ormsbee I* and a predecessor case, *St. Paul Fire and Marine Ins. v. Gilmore*, 812 P.2d 977 (Ariz. 1991), the Arizona Legislature amended § 20-259.01 in 1993 to provide that an insurer was no longer required to offer UM and UIM coverage to customers purchasing umbrella policies. A.R.S. § 20-259.01(L); *see Petrusek v. Farmers Ins. Co. of Ariz.*, 975 P.2d 142, 146 (Ariz. Ct. App. 1998); *Ormsbee v. Allstate Ins. Co.*, 865 P.2d 807, 808 (Ariz. 1993) ("*Ormsbee II*"). The amendment was passed as subsection (I), re-designated as subsection (K), and is now codified at § 20-259.01(L). *See Johnson v. Continental Ins. Co.*, 7 P.3d 966, 967 (Ariz. Ct. App. 2000). Policies sold after the 1993 amendment do not included the imputed coverage. *Petrusek*, 975 P.2d at 145-46.

As already noted, Plaintiffs purchased their umbrella policy in 1992. The question in this case is whether the UM and UIM coverage imputed by operation of law when the policy was purchased in 1992 survived the 1993 amendment.

Plaintiffs argue that Defendant's obligations recognized in *Ormsbee I* survived the 1993 amendment and Plaintiffs' nine subsequent policy renewals. Plaintiffs rely on language in *Ormsbee II* that "[w]hatever [the amendment] means for conduct occurring on or after its effective date, it has no effect on obligations which arose under the statute before its amendment." *Id*. at 808. In *Ormsbee II*, however, the accident occurred before the Legislature amended § 20-259.01 in 1993. The case does not address Plaintiffs' situation – an accident occurring years after the amendment.

Plaintiffs also cite cases holding that upon renewal of a policy the insurer must notify the insured of a reduction in coverage or else the insured is entitled to the previous, higher benefits. Dkt. #11 at 9 (citing *Government Employees Ins. Co. v. United States*, 400 F.2d

1   172 (10th Cir. 1968); *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570

2   (Minn. 1977)).  Plaintiffs argue that because *Ormsbee I* imputed UM and UIM coverage

3   before 1993 and Defendant did not notify them of the reduction in coverage caused by the

4   1993 amendment, the imputed coverage remained in their policy.

5         Defendant argues that *Ormsbee I* imputed UM and UIM coverage only when the

6   accident happened before the amendment of § 20-259.01, that the amendment extinguished

7   any imputed coverage, and that any obligation of Defendant to notify Plaintiffs upon

8   subsequent renewals that they did not have UM or UIM coverage was also extinguished by

9   the amendment.

10         The parties do not cite, and the Court has not found, controlling Arizona precedent.

11   The Court must therefore "predict how the highest state court would decide the issue using

12   intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises,

13   and restatements as guidance." *Vestar Development II, LLC v. General Dynamics Corp.*, 249

14   F.3d 958, 960 (9th Cir. 2001) (citations omitted).

15   **II.   Discussion.**

16         Cases from other jurisdictions have held that renewals are new and independent

17   contracts governed by laws in effect on the date of renewal, and that any imputation of UM

18   and UIM coverage for failure to offer such coverage is extinguished when a state legislature

19   stops requiring insurance companies to offer such coverage.  *See Hauer v. Integrity Mut. Ins.*

20   *Co.*, 352 N.W.2d 406, 408 (Minn. 1984) ("Any right of [plaintiff] to have underinsured

21   motorist coverage read into his policy was merely an inchoate right which failed to ripen

22   prior to renewal.  To hold otherwise would subject an insurer to potential liability some 5 or

23   10 years after the legislature expressly repealed the mandatory offer provision."); *Eipert v.*

24   *State Farm Mut. Auto. Ins. Co.*, 545 N.E.2d 497, 501 (1989); *Courville v. State Farm Mut.*

25   *Auto. Ins. Co.*, 386 So.2d 176, 177-78 (La. App. 1980), *aff'd in part, rev'd in part on other*

26   *grounds*, 393 So.2d 703 (La. 1981).

27         A leading treatise provides this explanation:

28

1    One exception to the principle that the renewal contract is the same as the
2    original contract, involves statutes enacted prior to the renewal; these
     ordinarily become a part of the renewal contract, since, generally, a renewal
3    contract is subject to the laws in force at the time it is effected.  And of course
     if the original policy was expressly made subject to such statutory provisions
4    as may exist, renewals taken after the enactment of an applicable statute
     become subject thereto, and an amendment of the contract is brought about.
5    Although an insurer, on the renewal of a policy, has the duty to inform the
     insureds of any changes in the policy, the insurer does not have the duty to
6    inform the insureds of changes in insurance laws.

7    Lee R. Russ & Thomas F. Segalla, 2 *Couch on Insurance*, § 29:43 (3d 2006).

8           These cases and commentary indicate that if state law treats the renewal of an

9    insurance policy as a new contract, any law passed since the previous renewal is incorporated

10   into the new contract.  Although the parties have cited no Arizona Supreme Court case

11   addressing the effect of a policy renewal, the Arizona Court of Appeals has treated persons

12   renewing insurance contracts as persons purchasing new policies. *See State Farm Mut. Auto.*

13   *Ins. Co. v. Ash*, 888 P.2d 1354, 1359 (Ariz. Ct. App. 1995).  In doing so, the Court of

14   Appeals cited the *Courville* case favorably, noting in its description of the case that "each

15   renewal is a separate contract."  *Id*.  This suggests that Arizona courts will follow *Courville*

16   and the principle that renewals of policies constitute new contracts that incorporate the then-

17   existing law.

18          The Court cannot accept Plaintiff's argument that the language of *Ormsbee II* means

19   that the 1993 amendment had no effect on obligations implied by law before the amendment.

20   Although such a conclusion certainly makes sense for accidents occurring before the

21   amendment and at a time when the law imputed UM and UIM coverage, *Ormsbee II* simply

22   did not address the situation in this case – an accident occurring years after the law had been

23   amended.  The Court concludes that a provision imputed by law can be removed by law, and

24   that the Arizona Legislature did precisely that when it amended the statute in 1993.  The

25   Court also concludes, consistent with *Crouch*, that Defendant did not have an obligation to

26   inform Plaintiffs of the change in the law.  Although insureds surely should be informed

27   when an insurer changes the nature of an agreed-upon insurance coverage in a way contrary

28   to the parties' original understanding, here there was no original understanding that included

UM or UIM coverage.  The coverage arose from judicial interpretation of a statute, not from the parties' agreement, and the Court cannot conclude that cases requiring disclosure of changes in the parties' agreement likewise required disclosure of changes in the law.

The Court concludes that *Hauer*, *Eipert*, *Courville* and *Couch on Insurance* would be followed by Arizona courts, particularly given the Court of Appeals' favorable citation of *Courville*.  Thus, the UM and UIM coverage that was imputed to Plaintiffs' policy when it was purchased in 1992 was extinguished by the Arizona Legislature's 1993 amendment of § 20-259.01.  While the Court is sympathetic to Plaintiffs' situation, the Court concludes the Arizona Supreme Court would reach the same conclusion.

**IT IS ORDERED:**

1.      Plaintiffs' motion for summary judgment (Dkt. #11) is **denied**.

2.      Defendant's cross motion for summary judgment (Dkt. #14) is **granted**.

3.      The Clerk is instructed to terminate this action.

DATED this 25th day of May, 2007.

_____
David G. Campbell
United States District Judge